Roy BENNETT and Wanda Cunningham, as representatives for the estate of Hattie Cunningham, on their own behalf and on behalf of all those similarly situated, Plaintiffs–Appellants,

v.

Helen R. JETT,* individually and in her capacity as Director of the Illinois Department of Human Rights, Defendant–Appellee.

No. 89–3162.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1990.

Decided Feb. 4, 1992.

Randall D. Schmidt, Gary H. Palm, Jack M. Beermann, Lou Irish, Johnathan K. Baum, Alvin Dodek, Mandel Legal Aid Clinic, Chicago, Ill., Tamir W. Rosenblum

---

* After this litigation was commenced Helen R. Jett replaced Joyce E. Tucker as Director of the

Illinois Department of Human Rights.

(argued), Cohen, Weiss & Simon, New York City, for plaintiffs-appellants.

Jeffrey W. Finke (argued) Asst. Atty. Gen., Frona C. Daska, Office of Atty. Gen., Chicago, Ill., for defendant-appellee.

Charles C. Jackson, Jeffrey S. Heller, Mark A. Weintraub, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for amicus curiae.

Before CUMMINGS and KANNE, Circuit Judges, and SNEED, Senior Circuit Judge.**

KANNE, Circuit Judge.

This matter comes before us for the second time. In our earlier disposition of this case, we reversed the district court's entry of summary judgment in favor of the defendant, and remanded the case for further proceedings consistent with that opinion. *Bennett v. Tucker*, 827 F.2d 63, 73 (7th Cir.1987). On remand, the district court again entered summary judgment in favor of the defendant on the grounds that the Supreme Court's ruling in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1981), could not be applied retroactively to the plaintiffs' claims under *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Plaintiffs now appeal from that judgment. We affirm.

## I.

The facts of this litigation are fully discussed in our earlier opinion, *Bennett*, 827 F.2d at 65–67, and warrant only brief mention here. On January 23, 1983, the plaintiffs brought this class action for declaratory and injunctive relief under 42 U.S.C. § 1983 to compel Joyce E. Tucker, Director of the Illinois Department of Human Rights (DHR), to adjudicate some 3,000 unfair employment charges which were never processed by either the DHR or its predecessor agency, the Illinois Fair Employment Practices Commission (FEPC). According to the plaintiffs, the DHR violat-

ed their due process and equal protection rights by refusing to process their claims after the FEPC had failed to investigate or dismiss their claims within 180 days of their filing, pursuant to the Illinois Supreme Court's decision in *Board of Governors v. FEPC*, 78 Ill.2d 143, 35 Ill.Dec. 524, 399 N.E.2d 590 (1979). Three months after the plaintiffs brought suit, the DHR moved to dismiss the action on eleven separate grounds. The district court, however, denied the motion. Both parties then filed cross-motions for summary judgment.

In a memorandum decision issued on May 8, 1986, the district court held that the plaintiffs' claims were barred by laches and accordingly granted summary judgment in favor of the DHR. We reversed, finding that it was not unreasonable for the plaintiffs to delay filing suit until after the Supreme Court had decided *Logan*. *Bennett*, 827 F.2d at 69. In our view, "given the pendency of *Logan v. Zimmerman* before the Supreme Court," the defendant "should have realized that claimants might be delaying legal action pending the Court's decision." *Id.* We accordingly remanded the case to the district court for further proceedings in conformity with our decision.

On remand, the district court reinstated its entry of summary judgment in favor of the defendant on the ground that *Logan* could not be applied retroactively to the plaintiffs' claims under the retroactivity analysis of *Chevron Oil Co. v. Huson*. In reaching this conclusion, the district court first determined that the plaintiffs' claims were subject to the *Chevron* analysis because the DHR was not engaged in an ongoing violation of the plaintiffs' constitutional rights. The court then proceeded to weigh the factors set forth in *Chevron*, and found as follows: (1) *Logan* was a case of first impression which was not clearly foreshadowed on the date that the Illinois Supreme Court decided *Board of Governors*; (2) refusing to apply *Logan* retroactively would neither further nor retard its opera-

** The Honorable Joseph T. Sneed, Senior Circuit Judge for the Ninth Circuit Court of Appeals, is sitting by designation.

tion; and (3) the retroactive application of *Logan* would produce substantial inequitable results to both the DHR and third party employers. This appeal followed.

## II.

We first examine whether the district court properly concluded that the plaintiffs' claims were subject to the retroactivity analysis of *Chevron*. The plaintiffs contend that the DHR's alleged failure to act on their claims within the 180–day processing period constitutes an ongoing violation of their due process and equal protection rights since the DHR never finally adjudicated their claims. They maintain that DHR did not intend to dismiss their claims, but rather intended only to "close" their claims for administrative purposes. Accordingly, the plaintiffs conclude that the district court committed reversible error by applying the *Chevron* retroactivity analysis; as the court itself pointed out, if the DHR's conduct is characterized as continuing or ongoing, then "the retroactivity doctrine has no place here."

■ A review of the DHR order which closed the investigation of the plaintiffs' claims dispels any suggestion that the DHR failed to take final action on these claims:

> You were previously informed of the court's decision which dismissed a charge like yours which was not completely investigated by the FEPC within 180 days of being filed. Recently, the court addressed this issue in [*Board of Governors*] and decided that such charges may no longer be processed.
>
> YOU ARE HEREBY NOTIFIED that, because the Illinois Fair Employment Practices Commission failed to complete investigation and conciliation in the above charge(s) within 180 days of filing as required under *Board of Governors, etc. v. FEPC et al.*, 78 Ill.2d 143, 35 Ill.Dec. 524, 399 N.E.2d 590 (1979), NOW THEREFORE the Illinois Department of Human Rights, as successor to the Fair Employment Practices Commission, has closed the file in the charge(s) and will conduct no further proceedings thereon.

There is no question that the DHR altered the plaintiffs' legal rights by definitively terminating all proceedings on their claims. Nor is there any intimation the DHR was merely setting aside these claims for future adjudication. Whether such treatment is characterized as a "closure" or a dismissal is irrelevant, for the order's message is quite clear: the DHR "will conduct no further proceedings" on the plaintiffs' charges. We therefore hold that the district court did not err in determining that the plaintiffs' claims were subject to the *Chevron* retroactivity analysis.

■ We next examine whether the district court properly applied the general retroactivity analysis enunciated in *Chevron*. In *Chevron*, the Supreme Court fashioned a three-part test to identify situations in which a civil, nonconstitutional precedent should be applied on a prospective basis only: (1) does the decision "establish a new principle of law, either by overruling clear past precedent on which the litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed?"; (2) considering "the prior history of the rule in question, its purpose and effect," does retroactive application "further or retard" the operation of the rule?; and (3) does retroactive application create "injustice or hardship" for one of the parties? *Chevron*, 404 U.S. at 106–107, 92 S.Ct. at 355. Since there is a presumption favoring retroactivity in civil cases, all three *Chevron* factors must support prospective application in order to limit the retroactive effect of the decision. *NLRB v. Lyon & Ford, Inc.*, 647 F.2d 745, 757 (7th Cir.), *cert. denied*, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981). *Compare Austin v. City of Bisbee, Arizona*, 855 F.2d 1429, 1433 (9th Cir.1988) (not all *Chevron* factors need support prospective application). The defendant bears the burden of establishing that all three prongs of the *Chevron* test are satisfied. *Lyon & Ford, Inc.*, 647 F.2d at 757.

■ A careful consideration of the *Chevron* factors leads us to conclude that the district court correctly found retroactive relief to be inappropriate.

First, *Logan* established a new principle of law by effectively overruling Illinois precedent upon which the parties properly relied. In *Zimmerman Brush Co. v. FEPC*, 82 Ill.2d 99, 44 Ill.Dec. 308, 411 N.E.2d 277 (1980), the Illinois Supreme Court held that the FEPC's failure to convene a factfinding conference within 120 days deprived it of jurisdiction to adjudicate the plaintiffs' claims. In so ruling, the court reasoned that the legislative direction to convene a fact-finding conference within the 120–day period was mandatory in nature. 44 Ill.Dec. at 311, 411 N.E.2d at 280. To support this conclusion, the *Zimmerman* court relied on two earlier cases which had previously construed the 180–day period for issuing a complaint on an employee's charge as mandatory:

> In *Springfield–Sangamon County Regional Plan Com. v. Fair Employment Practices Com.* (1978), 71 Ill.2d 61, 15 Ill.Dec. 623, 373 N.E.2d 1307, this court analogized the 180–day period to a period of a statute of limitations.... The court went on to hold that "the 180 day period prescribed in the statute was intended to ensure expeditious action on behalf of the FEPC, and must be considered mandatory." (71 Ill.2d 61, 73, 15 Ill.Dec. 623, 628, 373 N.E.2d 1307, 1312).... Shortly thereafter, in *Board of Governors v. Illinois Fair Employment Practices Com.* (1979), 78 Ill.2d 143, 149, 35 Ill.Dec. 524, 399 N.E.2d 590, the decision in *Springfield–Sangamon* was upheld as being "clear and unequivocal...."

*Id.* Significantly, the *Zimmerman* court also rejected the claimants' contention that their due process rights were violated by extinguishing their claims under the legislative scheme of FEPA:

> We also are not persuaded by the employees' protests that his rights to due process and equal protection were violated. The statutory scheme here was to provide, through administrative and judicial channels, a means of relief from discriminatory employment practices. The legislature could establish reasonable procedures to be followed upon a charge, and the observance of them here did not violate his constitutional rights. 44 Ill.Dec. at 313, 411 N.E.2d at 282.

In *Logan*, the United States Supreme Court held that the plaintiffs' due process rights were violated by construing FEPA to require that a fact-finding conference be convened within 120 days in order to preserve a discrimination claim. 455 U.S. at 437–38, 102 S.Ct. at 1158–59. According to the *Logan* Court, FEPA entitled a complainant to have the Commission adjudicate his charge on the merits and to seek judicial review of that determination. *Id.* at 434, 102 S.Ct. at 1157. Hence, it necessarily follows that *Springfield–Sangamon* and *Board of Governors* were implicitly, but no less forcefully, overruled. These cases served as the foundation for the Illinois Supreme Court's determination that a final adjudication on the merits of the plaintiffs' claims was unnecessary. As such, the plaintiffs cannot seriously argue that *Springfield–Sangamon* and *Board of Governors* were not likewise rejected—albeit *sub silentio*—by the *Logan* Court's holding.

There is no question that the requirements of the second *Chevron* factor—whether retroactivity is necessary under the circumstances to ensure compliance with the new rule—have also been established. In 1980, the Illinois legislature repealed the very statutory procedures at issue, and the plaintiffs make no contention that the DHR has since then refused to process discrimination charges pending beyond 180 days. The Illinois courts have also held that the DHR no longer loses its jurisdiction to adjudicate charges after the statutory period expires. *Franks v. Tucker*, 132 Ill.App.3d 455, 463, 87 Ill.Dec. 323, 329, 476 N.E.2d 1315, 1321 (1st Dist.1985); *see also* Ill.Rev.Stat. ch. 68, § 7–102(G)(3). In short, denying the retroactive application of *Logan* will "not weaken the rule in any respect or retard its operation." *Silverman v. Barry*, 845 F.2d 1072, 1085 (D.C.Cir.), *cert. denied*, 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988); *Cohn v. G.D. Searle & Co.*, 784 F.2d 460, 465 (3d Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 248 (1986).

The third *Chevron* factor—whether retroactive application will generate undue hardship or inequity for one of the parties—likewise favors the DHR. Requiring these 3,000 claims to be reinvestigated now would impose an enormous administrative burden on the DHR. The DHR estimates that it would cost the state nearly nine million dollars to process these claims, all of which have now been dead for more than twelve years.[1] And with each passing year, locating the subject employers and employees becomes more expensive and difficult.[2] But however burdensome it would be for the DHR to reinvestigate these claims, it would be exponentially more difficult, costly and prejudicial for employers to establish a defense after so long a period. Few would have the means, or the financial ability, to assemble the evidence and testimony necessary to prepare an adequate defense. In addition, resurrecting these 3,000 charges would also be unfair to the persons who presently have current discrimination charges pending, for investigating their charges would have to be abandoned while the DHR used its already inadequate resources to process the older claims.

Finally, and most significantly, the plaintiffs failed to pursue the many avenues of alternative relief available to them. They failed to heed advice that they file identical FEPC charges directly in state court. And although a vast majority of the plaintiffs could have filed Title VII claims, none did so. In short, the plaintiffs' claims of substantial hardship are belied by their own inaction—an inaction for which neither the State, employers nor pending and future claimants should be held accountable.[3]

We therefore hold that the district court did not err in refusing to grant retroactive relief to the plaintiffs.

### III.

The other issues raised by the plaintiffs are meritless. We accordingly AFFIRM the district court's entry of summary judgment in favor of the defendant.

---

1. These figures are based upon 1986 dollars. In 1990 dollars, the total loss to the state is even greater.

2. To be sure, the mere fact that the retroactive application of *Logan* imposes an onerous burden on the DHR does not, by definition, render that burden inequitable. As the district court pointed out, "[r]etroactivity always imposes costs on the adversely affected party, but liability does not equate with inequity." In this case, however, the DHR would be subjected to costs above and beyond those it would have incurred had it correctly processed the plaintiffs' claims—a result which could scarcely be labeled equitable.

3. We reject the plaintiffs' assertion that our earlier decision precludes our determination now that reopening these claims would place a great burden on state resources. While it is true we indicated that we did "not believe that a judgment for the plaintiffs will result in the dire *consequences that the defendant predicts," Bennett,* 827 F.2d at 73, this statement was hardly intended to be controlling. Indeed, we later indicated that the district court, on remand, would bear the responsibility for "fashioning a remedy that reflects the plaintiffs interest in having their claims processed, as well as the Department's interest in avoiding procedures that are unnecessarily burdensome." *Id.*